Xavier A. Palacios, Esq.
Palacios Law Group
15 Roslyn Road
Mineola, NY 11501
Xavier@palacioslawgroup.com
Attorney for Petitioner

---

ARNULFO RENE GARCIA AGUILERA

                *Petitioner,*

V.

MARK WAYNE MULLIN *Secretary of the Department of Homeland Security*, TODD M. LYONS, *Acting Director, United States Immigration and Customs Enforcement*, in their official capacity, WILLIAM JOYCE, *Deputy Director of the New York Field Office of U.S. Immigration and Customs Enforcement*, in their official capacity, TODD BLANCHE, *Acting Attorney General of the United States,* RAUL MALDONADO, JR., *Warden of the Metropolitan Detention Center,* in their official capacity

                *Respondents.*

**Case File No: 1:26-cv-2412**

**PETITION FOR WRIT OF HABEAS CORPUS**

---

## INTRODUCTION

1. Petitioner Arnulfo Rene Garcia Aguilera ("Petitioner"), (A241-102-198), by and through

undersigned counsel, respectfully petitions this Court for a writ of habeas corpus pursuant to 28

U.S.C. § 2241 challenging his unlawful detention by the United States Department of Homeland

Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE").

2. Petitioner is a citizen of Honduras who has resided continuously in the United States since

2005. In the early morning hours of March 1, 2026, Petitioner was arrested by ICE officers at a

precinct of the Nassau County Police Department, hours after Nassau County officers had

1

detained him inside a deli, searched him, and taken him into state custody on a misdemeanor controlled substance charge that Petitioner denies. Petitioner has not been arraigned on the state charge and has never had the opportunity to appear before a state court judge in connection with it, because Nassau County personnel transferred him to ICE custody so quickly that no arraignment could take place. He is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.

3. Petitioner's detention is unlawful on three independent grounds. First, Respondents purport to detain Petitioner as a person subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), notwithstanding that he has been living inside the United States for nearly twenty years and is therefore subject, if at all, to the discretionary detention provision at 8 U.S.C. § 1226(a). An overwhelming majority of federal courts to consider the question have held that 8 U.S.C. § 1225(b)(2) does not authorize mandatory detention of noncitizens like Petitioner who entered the United States without inspection and have been residing in the country for an extended period, as opposed to "arriving aliens" presenting themselves at a port of entry. *See Ye v. Maldonado*, No. 25-CV-6417, 2025 WL 3521298 (E.D.N.Y. Dec. 8, 2025); *O.F.B. v. Maldonado*, No. 25-CV-6336, 2025 WL 3277677 (E.D.N.Y. Nov. 25, 2025); *Sarmiento Guerrero v. Noem*, No. 25-cv-05881, 2025 WL 3214787 (E.D.N.Y. Nov. 18, 2025); *J.U. v. Maldonado*, No. 25-cv-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *F.H.H. v. Genalo*, No. 26-CV-00525 (HG) (E.D.N.Y. 2026); *J.G.I. v. Genalo*, No. 26-CV-581 (AMD) (E.D.N.Y. Feb. 2026); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Tumba Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025); *Rivera Esperanza v. Francis*, 2025 WL

3513983 (S.D.N.Y. Dec. 8, 2025); *Sandoval Abzun v. Genalo*, 2026 WL 100028 (S.D.N.Y. Jan. 14, 2026).

4. Second, Respondents effected Petitioner's arrest and ongoing civil detention with no deliberative process prior to, or contemporaneous with, the decision to deprive him of his liberty. *See Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025). Third, Petitioner's arrest and subsequent transfer to ICE custody were the direct product of an unlawful stop, search, and arrest by Nassau County Police Department officers who lacked reasonable suspicion of a crime, lacked probable cause to arrest, and lacked any federal authorization to investigate or enforce civil immigration law, all in violation of the Fourth Amendment.

5. Petitioner respectfully seeks a writ of habeas corpus and his immediate release from custody.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). The Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

7. A petition for a writ of habeas corpus under 28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

3

8. Although certain provisions of the INA limit judicial review of discretionary custody determinations, *see* 8 U.S.C. § 1226(e), those provisions do not preclude habeas review of constitutional claims, questions of law, or challenges to the legal basis for detention itself. Petitioner does not ask this Court to review or second guess any discretionary bond decision. Rather, he challenges Respondents' authority to detain Petitioner without any individualized custody determination and the constitutionality of detention without meaningful review. Such claims fall within the scope of habeas review. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018).

9. Venue is proper in this district pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is being detained by ICE at the Metropolitan Detention Center in Brooklyn, New York, which lies within the Eastern District of New York, and his immediate custodian, Warden Raul Maldonado, Jr., is located within this district. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004).

## <u>REQUIREMENTS OF 28 U.S.C. § 2243</u>

10. The Court must grant the petition for writ of habeas corpus or issue an order to show cause to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

11. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

## PARTIES

12. Petitioner Arnulfo Rene Garcia Aguilera is a native and citizen of Honduras. He has resided in the United States since approximately 2005, a period of nearly twenty years. He is currently detained by ICE at the Metropolitan Detention Center in Brooklyn, New York, and is under the direct control of Respondents.

13. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He oversees DHS, which oversees ICE, and is responsible for administering and enforcing the immigration laws of the United States. He is sued in his official capacity.

14. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement, the agency that is detaining Petitioner. He is sued in his official capacity.

15. Respondent William Joyce is the Deputy Director for ICE's New York City Field Office, which maintains responsibility over Nassau and Kings Counties. He is sued in his official capacity.

16. Respondent Todd Blanche is the Acting Attorney General of the United States. He oversees the immigration court system, which is housed within the Executive Office for Immigration Review ("EOIR") and includes all Immigration Judges and the Board of Immigration Appeals ("BIA"). He is sued in his official capacity.

17. Respondent Raul Maldonado, Jr. is the Warden of the Metropolitan Detention Center in Brooklyn, New York, where Petitioner is currently detained. He is Petitioner's immediate physical custodian. He is sued in his official capacity.

## STATEMENT OF FACTS

18. Petitioner is a native and citizen of Honduras, born on September 27, 1982.

19. Petitioner entered the United States in 2005. He was not detected at the border and was not placed in any immigration proceedings at the time of his entry.

20. Since his entry, Petitioner has resided continuously in the United States for nearly twenty years, building his life in New York.

21. Prior to his arrest by ICE on March 1, 2026, Petitioner had no prior immigration proceedings of any kind. No Notice to Appear had ever been issued to him, and he had never been placed in removal proceedings. He had no prior immigration contact with DHS or any of its component agencies.

22. In early 2025, the Nassau County Police Department entered into a formal cooperation agreement with ICE under section 287(g) of the Immigration and Nationality Act, 8 U.S.C. § 1357(g), pursuant to which a limited number of specifically designated Nassau County officers are purportedly authorized to perform certain federal immigration enforcement functions under ICE direction and supervision.

23. By statute, the authority to perform immigration enforcement functions under a 287(g) agreement extends only to those officers who have been formally certified for such duty and who act under ICE direction and supervision, and only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1)–(3). The agreement does not confer immigration enforcement authority on the general rank and file of the Nassau County Police Department.

24. On or about February 28, 2026, in the late evening, Petitioner was inside a deli in Hempstead, New York, when Nassau County Police Department officers approached him, asked him to step outside, searched his person, and eventually placed him under arrest.

25. Upon information and belief, the Nassau County officers who encountered Petitioner did not know his identity prior to the encounter and had no particularized, articulable facts suggesting that Petitioner had committed, was committing, or was about to commit any crime.

26. Petitioner was taken to a Nassau County precinct and charged with criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, a class A misdemeanor. Petitioner denies the charge. Petitioner has not been arraigned on this charge and has never had the opportunity to appear before a state court judge in connection with it, because Nassau County personnel transferred him to ICE custody so quickly that no arraignment could take place.

27. Upon information and belief, none of the Nassau County officers who stopped, searched, and arrested Petitioner were among the limited subset of Nassau County officers specifically certified under the 287(g) agreement to perform federal immigration enforcement functions, and none acted under the direction or supervision of any ICE officer during the stop or arrest.

28. While Petitioner was still at the precinct, and before he had any meaningful opportunity to contest the state charge or to appear before a state court judge, Nassau County personnel contacted ICE ERO Long Island concerning Petitioner.

29. In the early morning hours of March 1, 2026, ICE officers came to the precinct, took custody of Petitioner, and transferred him to an ICE processing facility. The NTA that appears in Petitioner's file is dated March 1, 2026, but it is unclear whether it was prepared before or after ICE officers took Petitioner into custody. An NTA is the charging document that commences removal proceedings under 8 U.S.C. § 1229(a), and the authority to issue administrative arrest warrants derives from a pending removal proceeding initiated by the issuance of an NTA. To the

7

extent the NTA and administrative arrest warrant were issued after Petitioner was already in ICE custody, those documents cannot validate the prior deprivation of liberty. *See Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025).

30. Petitioner was not afforded any individualized explanation for his civil detention, and was not given any opportunity to be heard before a neutral decisionmaker prior to or contemporaneously with his arrest.

31. Petitioner has been continuously detained by ICE since March 1, 2026. He is currently detained at the Metropolitan Detention Center in Brooklyn, New York.

32. Upon information and belief, Respondents are detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A) on the theory that he is an "applicant for admission" subject to mandatory detention. However, Petitioner is not an "arriving alien" and is not "seeking admission" at a port of entry.

33. Respondents have not conducted any individualized assessment as to whether Petitioner poses a flight risk or danger to the community to justify his detention. Petitioner has been denied any meaningful opportunity to contest the basis for his detention before a neutral decisionmaker. At the time of filing, there is no available information about who made the decision to detain Petitioner, when that decision was made, on what basis the decision was reached, or whether there was any individualized consideration of the circumstances of his case. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025).

## **LEGAL FRAMEWORK**

34. The INA generally provides for three forms of civil detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens arrested "on a

8

warrant" pending the resolution of standard removal proceedings before an Immigration Judge. *See* 8 U.S.C. § 1229(a). Unless they have been arrested, charged with, or convicted of certain enumerated crimes, which would subject them to mandatory detention until their removal proceedings are concluded, *see* 8 U.S.C. § 1226(c), an individual detained under § 1226(a) can be released by ICE on bond or conditional parole. *See* 8 U.S.C. § 1226(a)(1); 8 C.F.R. § 236.1(c) (8). If release is denied by ICE, the detainee can seek a custody redetermination before an Immigration Judge at the outset of their detention. *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d). At the hearing, the noncitizen may present evidence to show they are not a flight risk or danger to the community and should therefore be released on bond.

35. Second, the INA imposes mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and of an "applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" under § 1225(b)(2). Individuals detained under § 1225(b) receive no bond hearing, *see* 8 U.S.C. § 1225(b)(1)(B)(ii), (iii)(IV), (b)(2)(A), and can only be released under humanitarian parole at the arresting agency's discretion. *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); 8 U.S.C. § 1182(d)(5).

36. Lastly, and not relevant here, the INA provides for detention of noncitizens who have been issued a final order of removal. *See* 8 U.S.C. § 1231(a).

37. This case concerns the mandatory versus discretionary detention provisions under § 1225(b) (2) and § 1226(a). For nearly thirty years, § 1225 has applied to noncitizens who are either seeking entry to the United States or have a close nexus to the border, and § 1226 has applied to those noncitizens arrested within the interior of the United States. The Supreme Court in

9

*Jennings* explicitly adopted this distinction, describing § 1225 as the detention statute for noncitizens affirmatively "seeking admission" into the United States, and § 1226 as the detention statute for noncitizens who are "already in the country." *Jennings*, 583 U.S. at 289. Although the *Jennings* Court characterized § 1225(b)(2) as the "catchall" detention provision for noncitizens who are "seeking admission," it identified § 1226(a) as the "default rule" for the arrest, detention, and release of noncitizens who are already present in the United States. *Id.* at 303.

38. Courts have given great weight to the manner in which DHS treated the petitioner in determining which detention statute applies. *See Lopez Benitez*, 795 F. Supp. 3d at 487 (holding that § 1225 did not apply because DHS had consistently treated the petitioner as subject to discretionary detention under § 1226(a) and because the "plain text, overall structure, and uniform case law interpreting" the statutory provision compelled that conclusion).

39. Respondents' longstanding practice has been to apply § 1226(a) to noncitizens like Petitioner, who are charged as removable under INA § 212(a)(6)(A)(i).

40. The statutory structure confirms this reading. If the government's reading of § 1225 were correct, "it would have made no sense for Congress to enact a special provision implementing mandatory detention for certain noncitizens meeting specific criminal criteria" under § 1226(c), because "mandatory detention would have already applied to each such noncitizen regardless of their criminal history." *Tumba Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *4 (S.D.N.Y. Nov. 4, 2025); *see also Ye v. Maldonado*, 2025 WL 3521298, at *4 (E.D.N.Y. Dec. 8, 2025) (adopting the same reasoning and holding that the government's interpretation of § 1225 is "entirely inconsistent" with the broader statutory scheme); *Sarmiento Guerrero v. Noem*, 2025 WL 3214787, at *3 (E.D.N.Y. Nov. 18, 2025) (same).

41. Furthermore, "a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226," so if a petitioner was "detained pursuant to one provision, [he] cannot be subject to the other." *Lopez Benitez*, 795 F. Supp. 3d at 485. *See also Chipantiza-Sisalema v. Francis*, No. 25-CV-5528, 2025 WL 1927931 (S.D.N.Y. July 13, 2025).

42. Petitioner's pending misdemeanor charge under N.Y. Penal Law § 220.03, which has not resulted in a conviction or even an arraignment and which Petitioner denies, does not constitute a predicate offense for mandatory detention under § 1226(c). Accordingly, Petitioner's detention is properly governed by 8 U.S.C. § 1226(a), and he is entitled to an individualized custody determination and a bond hearing before an Immigration Judge. Under 8 C.F.R. § 1236.1(d)(1), Immigration Judges have the general authority to grant bond to noncitizens in removal proceedings under INA § 240. Respondents' detention of Petitioner under 8 U.S.C. § 1225(b)(2) (A) exceeds their statutory authority and violates the INA.

43. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

44. Federal courts in this District and elsewhere have repeatedly held that the government's detention of noncitizens "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates [their] due process rights." *Ye v.*

*Maldonado*, No. 25-CV-6417, 2025 WL 3521298 (E.D.N.Y. Dec. 8, 2025); *O.F.B. v. Maldonado*, No. 25-CV-6336, 2025 WL 3277677 (E.D.N.Y. Nov. 25, 2025); *J.U. v. Maldonado*, No. 25-cv-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Artiga v. Genalo*, No. 25-cv-05208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); *see also Rivera Esperanza v. Francis*, 2025 WL 3513983, at *7–8 (S.D.N.Y. Dec. 8, 2025); *Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025).

45. Although § 1226(a) and its implementing regulations grant DHS broad discretion to arrest and detain noncitizens, that discretion is still constrained by procedural due process. *See Rivera Esperanza*, 2025 WL 3513983, at *7 (citing *Lopez Benitez*, 2025 WL 2371588, at *10; *Tumba Huamani*, 2025 WL 3079014, at *7). "Due Process still requires that such discretion actually be exercised—i.e., that some determination actually be made." *Tumba Huamani*, 2025 WL 3079014, at *7. There is no indication that Petitioner was provided any process prior to his detention by Respondents.

46. Separate from the mandatory/discretionary detention question, this Court has recognized that the government's arrest and ongoing detention of a noncitizen violates the Due Process Clause when effected without any deliberative process prior to, or contemporaneous with, the decision to strip the person of his liberty. *See e.g., Chipantiza-Sisalema v. Francis*, No. 25-CV-5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (explaining that, without a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause, ICE agents cause a petitioner to be placed in custody in violation of his rights to procedural due process, and that the proper remedy for that unlawful detention is release).

47. The same lack of prior or contemporaneous process infects the administrative arrest itself. The authority to issue administrative arrest warrants emanates from a pending removal proceeding, which is initiated by the issuance of an NTA. *See Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025). Warrants cannot be issued before the NTA process has begun, because the warrant authority derives from the existence of an NTA. *Id.* In *Gopie*, this Court concluded that ICE had no authority to arrest the petitioner where ICE issued the petitioner's NTA after he was arrested, and explained that issuing an NTA after someone has been detained is a kind of papering over and cover up for illegal detention. *Id.*

48. Even if Section 1225 applied to Petitioner's detention, which it does not, Petitioner would still be entitled to due process before the government detained him. *See J.G.I. v. Genalo*, No. 26-CV-581 (AMD) (E.D.N.Y. Feb. 2026) (holding that, under either section of the INA, the government had unlawfully detained the petitioner because it denied him due process). The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (describing "release from illegal custody" as the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it").

49. Under the *Mathews v. Eldridge* balancing test, 424 U.S. 319 (1976), all three factors weigh in Petitioner's favor. The first factor, the private interest affected, weighs heavily in Petitioner's favor, as "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). The second factor, the risk of erroneous deprivation through the procedures used, also weighs in Petitioner's

favor, as he has been erroneously subjected to mandatory detention under § 1225 without any individualized assessment. The risk of erroneous deprivation through continued detention without any opportunity for an individualized assessment is significant. *See Black*, 103 F.4th at 152 (noting that the risk of erroneous deprivation "is correspondingly greater" when paired with the minimal procedural safeguards of mandatory detention). The third factor, the government's interest, is weak. Petitioner's mandatory detention is not authorized by § 1225, serves no legitimate purpose, and amounts to punitive detention warranting habeas relief.

50. The Fourth Amendment protects all persons within the United States, including noncitizens, against unreasonable searches and seizures. To stop a person for investigative purposes, a police officer must have reasonable, articulable suspicion that the person has committed or is about to commit a crime; to arrest, the officer must have probable cause. *See, e.g., Arizona v. United States*, 567 U.S. 387, 407–08 (2012).

51. Authority to enforce the civil provisions of the federal immigration laws rests with the federal government. State and local law enforcement officers, other than those specifically designated and certified under a valid 287(g) agreement and acting under the direction and supervision of federal officers, lack authority to stop, search, arrest, or detain a person solely on the basis of suspected civil immigration violations. *See Arizona*, 567 U.S. at 410 ("Detaining individuals solely to verify their immigration status would raise constitutional concerns."); 8 U.S.C. § 1357(g)(1)–(3).

52. An unlawful stop or arrest by state or local officers cannot be cured by a subsequent decision of federal agents to assume custody of the arrestee. Where ICE's detention is the direct product of a stop and arrest that were themselves unconstitutional, the resulting federal custody is

14

likewise unlawful, and habeas corpus is an available and appropriate remedy. *See, e.g., Munoz Materano v. Arteta*, No. 25-cv-6137, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025).

53. Petitioner's arrest at the deli in Hempstead on the evening of February 28, 2026, was effected by Nassau County Police Department officers who, on information and belief, had no particularized basis to suspect him of any crime and, on information and belief, were not among the narrow subset of officers certified to perform federal immigration enforcement under the County's 287(g) agreement. Petitioner's transfer to ICE custody in the early morning hours of March 1, 2026 was the direct fruit of that unlawful stop and arrest, and his present federal detention rests on that same unlawful foundation.

54. To the extent Respondents argue that Petitioner must exhaust administrative remedies before seeking habeas relief, such exhaustion is excused. Judicial exhaustion may be excused when "available remedies provide no genuine opportunity for adequate relief" or exhaustion "would be futile." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). Both exceptions apply here. Respondents have classified Petitioner as subject to mandatory detention under § 1225(b)(2)(A), and Immigration Judges have consistently denied bond hearing requests for noncitizens so classified on jurisdictional grounds. *See Rivera Esperanza*, 2025 WL 3513983, at *9 (finding exhaustion excused because "administrative appeal would be futile" and petitioner "ha[d] raised a substantial constitutional question").

### CLAIMS FOR RELIEF
### FIRST CLAIM
#### *Violation of the Immigration and Nationality Act*

55. Petitioner repeats and realleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

56. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being detained by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

57. Petitioner is not an individual "seeking admission" within the meaning of § 1225(b)(2)(A). He has been residing continuously inside the United States for nearly twenty years. Under the plain text of the statute, the overall structure of the INA, and the distinction expressly drawn by the Supreme Court in *Jennings*, 583 U.S. at 289, between noncitizens "seeking admission" and noncitizens "already in the country," Petitioner is, at most, detainable as a matter of discretion under 8 U.S.C. § 1226(a). *See Lopez Benitez*, 795 F. Supp. 3d at 490–91.

58. Respondents' detention of Petitioner under 8 U.S.C. § 1225(b)(2)(A) exceeds their statutory authority and violates the INA. Petitioner's detention is properly governed by 8 U.S.C. § 1226(a), and he is entitled to an individualized custody determination and a bond hearing before an Immigration Judge.

### SECOND CLAIM
*Violation of the Due Process Clause of the Fifth Amendment*

59. Petitioner repeats and realleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

60. The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V. It applies to all persons within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent. *Zadvydas*, 533 U.S. at 693.

61. The Due Process Clause entitles Petitioner to a meaningful process assessing whether his detention is justified. Respondents detained Petitioner without prior notice, without any individualized assessment, and without a prospective opportunity to contest his detention in front of a neutral decisionmaker. Respondents' detention of Petitioner without any pre-deprivation process provides insufficient process and violates the Due Process Clause of the Fifth Amendment. *See e.g. Chipantiza-Sisalema v. Francis*, No. 25-CV-5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025).

62. The same lack of prior or contemporaneous process renders the administrative arrest itself unlawful. The authority to issue an administrative arrest warrant derives from a pending removal proceeding, which is initiated by the issuance of an NTA. *See Gopie*, 2025 WL 3167130, at *1. Warrants cannot be issued before the NTA process has begun. *Id.* Issuing an NTA after someone has been detained is a kind of papering over and cover up for illegal detention. *Id.*

63. Petitioner had never been placed in removal proceedings prior to his March 1, 2026 arrest by ICE. Upon information and belief, no NTA had been issued to Petitioner prior to, or contemporaneously with, that arrest. Although the NTA in Petitioner's file is dated March 1, 2026, it is unclear whether it was prepared before or after ICE officers took custody of Petitioner. Any administrative arrest warrant purportedly relied upon by Respondents therefore derived, if at all, from a removal proceeding that may not yet have commenced, and any NTA issued after the arrest cannot validate the prior deprivation of liberty. *See Gopie*, 2025 WL 3167130, at *1.

64. Respondents' arrest and detention of Petitioner without prior notice, without a lawful administrative warrant supported by a pending NTA, and without any opportunity to be heard

before a neutral decisionmaker, violate Petitioner's rights to due process under the Fifth Amendment.

## THIRD CLAIM
### *Violation of the Fourth Amendment to the United States Constitution*

65. Petitioner repeats and realleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

66. The Fourth Amendment protects Petitioner against unreasonable searches and seizures. U.S. Const. amend. IV. A temporary investigative detention of a person requires reasonable, articulable suspicion of criminal activity, and an arrest requires probable cause. *See Arizona*, 567 U.S. at 407–08.

67. Upon information and belief, the Nassau County Police Department officers who approached Petitioner inside the deli on February 28, 2026 had no particularized, articulable facts suggesting that Petitioner had committed, was committing, or was about to commit any crime. Their stop, subsequent search of Petitioner's person, and arrest were therefore unreasonable seizures and searches under the Fourth Amendment.

68. Authority to enforce the civil immigration laws of the United States rests with the federal government. *See Arizona*, 567 U.S. at 407–10. State and local officers who have not been specifically certified under a valid 287(g) agreement and who are not acting under the direction and supervision of federal immigration officers lack authority to stop, search, arrest, or detain a person on the basis of a suspected civil immigration violation. 8 U.S.C. § 1357(g)(1)–(3).

69. Upon information and belief, none of the Nassau County officers involved in Petitioner's stop, search, and arrest were among the narrow subset of Nassau County officers specifically

18

certified to perform federal immigration enforcement under the County's 287(g) agreement, and none acted under the direction or supervision of any ICE officer during those events.

70. Petitioner's transfer to ICE custody hours after his state arrest was the direct product of the Nassau County officers' unlawful stop, search, and arrest. ICE may not, consistent with the Fourth Amendment, rely on the unconstitutional conduct of state or local law enforcement as the predicate for federal civil immigration detention. *See Munoz Materano*, 2025 WL 2630826.

71. Because Petitioner's present federal detention flows directly from the Nassau County Police Department's unlawful stop, search, and arrest, and because no independent and lawful basis for the ICE arrest has been provided, Petitioner's continued detention violates the Fourth Amendment and warrants habeas relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause directing Respondents to show cause why a writ of habeas corpus should not be granted within three days, pursuant to 28 U.S.C. § 2243;

(3) Issue a Temporary Restraining Order enjoining Respondents from transferring Petitioner outside of this District during the pendency of this action;

(4) Declare that Petitioner's detention violates the Immigration and Nationality Act, the Due Process Clause of the Fifth Amendment, and the Fourth Amendment to the United States Constitution;

(5) Grant the writ of habeas corpus and order Petitioner's immediate release from custody, or, in the alternative, order that Petitioner receive an individualized bond hearing before an

Immigration Judge within fourteen days, at which the government must bear the burden of showing, by clear and convincing evidence, that Petitioner presents a flight risk or threat to the community that cannot be mitigated by reasonable conditions of supervision or monetary bond; and

(6) Award such other and further relief as this Court deems just and proper.

Respectfully submitted,

Xavier A. Palacios, Esq.
PALACIOS LAW GROUP
15 Roslyn Road
Mineola, NY 11501
Attorney for Petitioner

Dated: April 23, 2026

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Arnulfo Rene Garcia Aguilera, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.